1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10
11  MARIO LAFAYETTE BAIN,        ) Case No. CV 16-0356-JPR
                                 )
12              Petitioner,      )
                                 )
13         v.                    ) MEMORANDUM DECISION AND ORDER
                                 ) DENYING PETITION FOR WRIT OF
                                 ) HABEAS CORPUS
14  WARDEN ARNOLD,               )
                                 )
15              Respondent.      )
    ─────────────────────────────)
16

17                         **PROCEEDINGS**

18         On January 15, 2016, Petitioner filed a Petition for Writ of

19  Habeas Corpus by a Person in State Custody.  He also consented to

20  having a U.S. Magistrate Judge conduct all further proceedings in

21  his case, including entering final judgment.  On March 3, 2016,

22  Respondent filed an Answer and consented to proceed before a

23  Magistrate Judge.  Petitioner did not file a reply.

24         For the reasons discussed below, the Court denies the

25  Petition and dismisses this action with prejudice.

26                         **BACKGROUND**

27         On January 27, 2014, a Los Angeles County Superior Court

28  jury found Petitioner guilty of possession of cocaine base for

                                 1

sale.  (Lodged Doc. 1, Clerk's Tr. at 133.)  The jury acquitted Petitioner of the charge of sale, transportation, or offer to sell a controlled substance.  (Id. at 132.)  Petitioner admitted that he had suffered two "strike" convictions under California's Three Strikes law, had served four prison terms, and had suffered five felony convictions.  (Id. at 31-32, 136, 163.)  On March 25, 2014, the trial court struck one of Petitioner's "strike" convictions and sentenced him to 10 years in state prison.  (Id. at 162-64, 166.)

Petitioner appealed, raising only the sole claim in the Petition.  (Lodged Doc. 3.)  On May 4, 2015, the California Court of Appeal affirmed the judgment.  (Lodged Doc. 6.)  Petitioner filed a petition for review in the California Supreme Court, which summarily denied review on July 15, 2015.  (Lodged Docs. 7, 8.)

## PETITIONER'S CLAIM

The trial court abused its discretion and violated Petitioner's 14th Amendment right to due process when it denied his pretrial Pitchess motion.[1]  (Pet. Mem. at 4-16.)

## SUMMARY OF PERTINENT FACTS

The factual summary in a state appellate-court opinion is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  See Crittenden v. Chappell, 804 F.3d 998, 1010-11 (9th Cir. 2015).  But see Murray v. Schriro, 745 F.3d 984, 1001

---

[1]    Pitchess v. Super. Ct., 11 Cal. 3d 531 (1974) (allowing discovery of internal police files in certain circumstances), superseded by statute, Cal. Penal Code §§ 832.7, 832.8, Cal. Evid. Code §§ 1043-45, as recognized in People v. Mooc, 26 Cal. 4th 1216, 1219-20 (2001).

1  (9th Cir. 2014) (discussing "state of confusion" in circuit's law
2  concerning interplay of § 2254(d)(2) and (e)(1)).  The Court
3  adopts the following statement of facts from the California Court
4  of Appeal's opinion as a fair and accurate summary of the
5  pertinent proceedings at trial.  The Court has nonetheless
6  independently reviewed the state-court record.

7         Prior to trial, [Petitioner] brought a <u>Pitchess</u>
8  motion seeking information in the personnel records of
9  three police officers, [Alonzo] Williams, [Benjamin]
10  McCauley, and [Jose] Calderon, relating to any alleged
11  conduct amounting to excessive force or dishonesty.
12  Attached to the motion was a copy of the arrest report,
13  signed by Officer Williams and Detective [Vip]
14  Kanchanamongkol, in which Officer Williams reported that
15  on August 27, 2013, at about 8:15 p.m., he was working
16  undercover in plain clothes with the Department's
17  Narcotics Task Force, near the intersection of Sixth
18  Street and San Julian Street in Los Angeles.  The team
19  consisted of approximately 15 officers.

20      As Officer Williams walked west on the south
21  sidewalk of Sixth Street he encountered [Petitioner], who
22  walked toward him and said, "Cavi cavi," which is street
23  vernacular for rock cocaine.  Officer Williams replied,
24  "I need a dub," which is street vernacular for $20 worth
25  of narcotics.  [Petitioner] replied, "Yeah, I have to go
26  to my ass for that amount," as he reached into his rear
27  waistband area and sat down in a nearby wheelchair.
28  [Petitioner] produced a clear plastic bag containing

3

numerous smaller bindles of off-white solids resembling rock cocaine. He then extracted one of the bindles and gave it to Officer Williams after the officer handed him a prerecorded $20 bill. Shortly after Officer Williams gave the predetermined "buy" signal to other officers who had observed the transaction, [Petitioner] was detained by Officers Lozano and [Huy] Nguyen and then arrested. From the seat of the wheelchair Officer McCauley recovered 111 plastic bindles containing off-white solids resembling rock cocaine. Officer Nguyen found currency totaling $176 on [Petitioner]'s person. The $176 included two $20 bills, three $10 bills, seven $5 bills and 69 one dollar bills, but the prerecorded $20 bill was not found, despite a search of the area by the responding officers. Detectives [Thomas] Mossman, Kanchanamongkol, and [Mariano] Garde monitored Officer Williams's transmission throughout his interaction with [Petitioner] via a one-way transmitter.[2]

Defense counsel supported the motion with her declaration, which included the following paragraph: "[Petitioner] was walking on the corner of Wall St. and 6th, in the city and county of Los Angeles. [Petitioner] denies saying the words 'Cavi, Cavi' to anyone. [Petitioner] never heard anyone, including an undercover

---

[2]   According to the arrest report, Officer Calderon observed the narcotics transaction between Petitioner and Officer Williams and directed "chase units" to detain Petitioner after the transaction was complete. (Lodged Doc. 1, Clerk's Tr. at 66.)

officer, say to him 'I need a dub.' [Petitioner] denies ever having a conversation with anyone, which consisted of him saying 'yeah, I have to go to my ass for that amount.' [Petitioner] was walking down the street, minding his own business, when the police stopped and searched him. The police did not find any illegal drugs on him during the search. [Petitioner] denies ever sitting in a wheelchair. [Petitioner] denies ever owning or possessing a wheelchair, or having sat in one on the day of his arrest. [Petitioner] did not reach into his waist band area with his right hand, and did not remove a large clear plastic bag containing numerous off white solids resembling rock cocaine. [Petitioner] adamantly denies ever giving anyone one [sic] a small clear plastic bindle containing an off white solid resembling rock cocaine in exchange for $20.00. [Petitioner] did not take or accept a twenty dollar bill from anyone. [Petitioner] did not sit in a wheelchair at any time. [Petitioner] was walking on the street when officers rushed him, searched him, failed to find illegal substances on his person, but arrested him anyway."

Counsel also stated on information and belief that Officers Williams, McCauley, and Calderon all lied about the events, that that [sic] this would be the defense raised at trial.

The trial court denied the <u>Pitchess</u> motion. The court acknowledged the low threshold for showing good cause, but found that [Petitioner]'s showing was merely

1   a denial.

2   (Lodged Doc. 6 at 3-4.)

3                        **STANDARD OF REVIEW**

4       Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and

5   Effective Death Penalty Act of 1996:

6       An application for a writ of habeas corpus on behalf of

7       a person in custody pursuant to the judgment of a State

8       court shall not be granted with respect to any claim that

9       was adjudicated on the merits in State court proceedings

10      unless the adjudication of the claim — (1) resulted in a

11      decision that was contrary to, or involved an

12      unreasonable application of, clearly established Federal

13      law, as determined by the Supreme Court of the United

14      States; or (2) resulted in a decision that was based on

15      an unreasonable determination of the facts in light of

16      the evidence presented in the State court proceeding.

17      Under AEDPA, the "clearly established Federal law" that

18  controls federal habeas review consists of holdings of Supreme

19  Court cases "as of the time of the relevant state-court

20  decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). As the

21  Supreme Court has "repeatedly emphasized, . . . circuit precedent

22  does not constitute 'clearly established Federal law, as

23  determined by the Supreme Court.'" Glebe v. Frost, 135 S. Ct.

24  429, 431 (2014) (per curiam) (quoting § 2254(d)(1)). Further,

25  circuit precedent "cannot 'refine or sharpen a general principle

26  of Supreme Court jurisprudence into a specific legal rule that

27  [the] Court has not announced.'" Lopez v. Smith, 135 S. Ct. 1, 4

28  (2014) (per curiam) (quoting Marshall v. Rodgers, 133 S. Ct.

1  1446, 1450 (2013) (per curiam)).

2      Although a particular state-court decision may be both
3  "contrary to" and "an unreasonable application of" controlling
4  Supreme Court law, the two phrases have distinct meanings.
5  Williams, 529 U.S. at 391, 412-13.  A state-court decision is
6  "contrary to" clearly established federal law if it either
7  applies a rule that contradicts governing Supreme Court law or
8  reaches a result that differs from the result the Supreme Court
9  reached on "materially indistinguishable" facts.  Early v.
10  Packer, 537 U.S. 3, 8 (2002) (per curiam) (citation omitted).  A
11  state court need not cite or even be aware of the controlling
12  Supreme Court cases, "so long as neither the reasoning nor the
13  result of the state-court decision contradicts them."  Id.

14      State-court decisions that are not "contrary to" Supreme
15  Court law may be set aside on federal habeas review only "if they
16  are not merely erroneous, but 'an unreasonable application' of
17  clearly established federal law, or based on 'an unreasonable
18  determination of the facts' (emphasis added)."  Id. at 11
19  (quoting § 2254(d)).  A state-court decision that correctly
20  identifies the governing legal rule may be rejected if it
21  unreasonably applies the rule to the facts of a particular case.
22  Williams, 529 U.S. at 407-08.  To obtain federal habeas relief
23  for such an "unreasonable application," however, a petitioner
24  must show that the state court's application of Supreme Court law
25  was "objectively unreasonable."  Id. at 409-10.  In other words,
26  habeas relief is warranted only if the state court's ruling was
27  "so lacking in justification that there was an error well
28  understood and comprehended in existing law beyond any

7

1  possibility for fairminded disagreement."  <u>Harrington v. Richter</u>,
2  562 U.S. 86, 103 (2011).

3      Petitioner raised his claim on direct appeal (Lodged Doc.
4  3), resting it on federal law as well as state law (<u>see</u> <u>infra</u>
5  note 3), and the court of appeal rejected it in a reasoned
6  decision; it did not, however, specifically address the federal
7  aspect of the claim (<u>see</u> Lodged Doc. 6).  The California Supreme
8  Court summarily denied review.  (Lodged Docs. 7, 8.)  The Court
9  "looks through" a state supreme court's silent denial to the
10  court of appeal's reasoned decision as the basis for the state
11  courts' judgment.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04
12  (1991).  Because the state courts adjudicated the federal claim
13  on the merits, <u>see</u> <u>Johnson v. Williams</u>, 133 S. Ct. 1088, 1095-96
14  (2013) (<u>Richter</u> presumption applies to federal claim unaddressed
15  in state court's reasoned decision), the Court's review is
16  limited by AEDPA deference.  <u>See</u> <u>Richter</u>, 562 U.S. at 100-01.

17      But because the state court did not expressly address the
18  federal aspect of the claim, the Court conducts an independent
19  review of the record to determine whether the state court was
20  objectively unreasonable in applying controlling federal law.
21  <u>See</u> <u>Haney v. Adams</u>, 641 F.3d 1168, 1171 (9th Cir. 2011)
22  (independent review "is not <u>de novo</u> review of the constitutional
23  issue, but only a means to determine whether the 'state court
24  decision is objectively unreasonable'" (citation omitted)); <u>see</u>
25  <u>also</u> <u>Richter</u>, 562 U.S. at 98, 102 (holding that petitioner still
26  has burden of "showing there was no reasonable basis for the
27  state court to deny relief," and reviewing court "must determine
28  what arguments or theories supported or . . . could have

8

1  supported[] the state court's decision" and "whether it is
2  possible fairminded jurists could disagree that those arguments
3  or theories are inconsistent with" Supreme Court precedent).

**DISCUSSION**

4
5  I.  Applicable Law

6     Although a Pitchess motion is a creature of state law, it
7  implicates the due process right to receive exculpatory and
8  impeachment evidence.  See Harrison v. Lockyer, 316 F.3d 1063,
9  1065-66 (9th Cir. 2003).  But a Pitchess claim is cognizable on
10 federal habeas review only if it "resolves to a claim that the
11 trial court's asserted error in connection with Petitioner's
12 Pitchess motion violated Petitioner's rights under the Brady
13 doctrine." Lopez-Martinez v. Dovey, No. CV 06-1987-CJC (MAN),
14 2009 WL 863576, at *15 (C.D. Cal. Mar. 26, 2009).  If a Brady
15 violation is not established, then a petitioner "has no federally
16 cognizable claim, regardless of whether the state court's
17 handling of his Pitchess motion was erroneous under state law."
18 Id.

19    Due process requires that a prosecutor disclose material
20 evidence favorable to the defense.  Brady v. Maryland, 373 U.S.
21 83, 87 (1963); Strickler v. Greene, 527 U.S. 263, 280 (1999)
22 (noting that evidence is "material" if "there is a reasonable
23 probability that, had the evidence been disclosed to the defense,
24 the result of the proceeding would have been different").  Three
25 elements must be proved to establish a Brady violation: (1) the
26 evidence at issue was favorable to the defendant, either as
27 exculpatory evidence or impeachment material; (2) the evidence
28 was suppressed by the state, willfully or inadvertently; and (3)

9

1   prejudice resulted from the failure to disclose the evidence.

2   *Strickler*, 527 U.S. at 281-82; *see also* *United States v. Bagley*,

3   473 U.S. 667, 675-78 (1985).   *Brady* did not, however, create a

4   general constitutional right to discovery.   *Weatherford v.*

5   *Bursey*, 429 U.S. 545, 559 (1977).   "[T]he Due Process Clause has

6   little to say regarding the amount of discovery which the parties

7   must be afforded."   *Id.* (citation omitted).

8   II.   Court of Appeal's Decision

9        On direct appeal, the court of appeal analyzed solely the

10  state-law aspect of Petitioner's claim.   (Lodged Doc. 6 at 4-10.)

11  It explained that under *Pitchess*, "on a showing of good cause, a

12  criminal defendant is entitled to discovery of relevant documents

13  or information in the confidential personnel records of a peace

14  officer accused of misconduct against the defendant."   (*Id.* at 4

15  (citations and alteration omitted).)   "If the defendant

16  establishes good cause, the court must review the requested

17  records in camera to determine what information, if any, should

18  be disclosed."   (*Id.* at 5 (citations omitted).)

19       The court of appeal analyzed counsel's showing and "agree[d]

20  with the trial court that counsel's declaration amounted to no

21  more than a denial of the facts stated in the police report."

22  (*Id.* at 6.)   Petitioner had not provided an alternative version

23  of the events, and although he contended that the failure to find

24  the "buy money" supported a possible defense based upon

25  fabrication by the police, counsel's declaration "failed to

26  present any factual scenario that might help to explain the scope

27  of the alleged fabrication."   (*Id.* at 9.)   Thus, Petitioner did

28  not show good cause, and the trial court did not abuse its

10

1  discretion by refusing to examine or order the disclosure of the

2  officers' personnel records.  (<u>Id.</u> at 10.)

3  III. <u>Analysis</u>

4      To the extent Petitioner contends the trial court abused its

5  discretion and misapplied state law when it denied his <u>Pitchess</u>

6  motion (Pet. Mem. at 14), his claim is not cognizable on federal

7  habeas review.  <u>See</u> § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62,

8  67-68 (1991) (habeas relief will not lie to correct errors in

9  interpretation or application of state law); <u>see also</u> <u>Williams v.</u>

10 <u>Borq</u>, 139 F.3d 737, 740 (9th Cir. 1998) (federal habeas relief

11 available "only for constitutional violation, not for abuse of

12 discretion").  Petitioner's sole cognizable federal claim is his

13 <u>Brady</u> claim.[3]  (Pet. Mem. at 5.)

14 _____

15     [3]  Respondent contends that Petitioner's <u>Brady</u> claim is
   unexhausted.  (Answer at 6-8.)  But although Petitioner did not
16 cite <u>Brady</u> in the state court, he argued in his court-of-appeal
   opening brief and in his petition for review that the trial
17 court's denial of his <u>Pitchess</u> motion violated his 14th Amendment
   right to due process because <u>Pitchess</u> was "based on the premise
18 that evidence contained in a law enforcement officer's personnel
   file may be relevant to an accused's criminal defense and that to
19 withhold such relevant evidence from the defendant would violate
   the accused's due process right to a fair trial."  (Lodged Doc. 3
20 at 16; Lodged Doc. 7 at 13-14.)  Petitioner supported his
   argument with a citation to <u>People v. Mooc</u>, 26 Cal. 4th 1216,
21 1225 (2001) (Lodged Doc. 3 at 16; Lodged Doc. 7 at 14), in which
   the California Supreme Court declared that the <u>Pitchess</u> procedure
22 "must be viewed against the larger background of the
   prosecution's constitutional obligation to disclose to a
23 defendant material exculpatory evidence so as not to infringe the
   defendant's right to a fair trial," and cited <u>Brady</u> and <u>Bagley</u>.
24 Petitioner, therefore, fairly presented his <u>Brady</u> claim to the
   state courts, and the claim is exhausted.
25
26
27     In any event, the Court may deny an unexhausted claim on the
   merits if it finds, on de novo review, that it is not even
28                                          (continued...)

1   The state court's denial of Petitioner's <u>Brady</u> claim was not
2   objectively unreasonable.  Petitioner has not shown that the
3   personnel records of Officers Williams, McCauley, and Calderon
4   contained any information material to his defense.  (<u>See</u> Lodged
5   Doc. 1, Clerk's Tr. at 49-75; Lodged Doc. 2, Rep.'s Tr. at A2-
6   A3.)  Because Petitioner did not make a sufficient preliminary
7   showing of materiality under state law -- a finding this Court is
8   bound by, <u>see</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (per
9   curiam) -- the trial court never proceeded to the second step of
10  the <u>Pitchess</u> procedure, an in camera review of the records.
11  Consequently, the record does not contain any information about
12  whether the officers' personnel files included exculpatory or
13  impeaching information.

14  Petitioner cannot base his <u>Brady</u> claim on mere speculation
15  that the files contained information giving rise to a reasonable
16  probability of a different result at trial had it been disclosed.
17  (<u>See</u> Pet. Mem. at 6, 15-16); <u>Runningeagle v. Ryan</u>, 686 F.3d 758,
18  769 (9th Cir. 2012) ("to state a <u>Brady</u> claim, [petitioner] is
19  required to do more than 'merely speculate' about" nature of
20  undisclosed evidence (citation omitted)); <u>United States v.</u>
21  <u>Lopez-Alvarez</u>, 970 F.2d 583, 598 (9th Cir. 1992) (rejecting <u>Brady</u>
22  claim when defendant's assertion that allegedly withheld evidence
23  existed was "purely speculative").  Absence of evidence that the

24
25
26
27  [3] (...continued)
    colorable, as is the case here.  <u>See</u> § 2254(b)(2); <u>Cassett v.</u>
    <u>Stewart</u>, 406 F.3d 614, 623-24 (9th Cir. 2005).
28

files contained <u>Brady</u> material is fatal to Petitioner's claim.[4]
<u>See</u> <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 58 n.15 (1987)
(criminal defendant "may not require the trial court to search
through" sensitive file "without first establishing a basis for
his claim that it contains material evidence"); <u>Harrison</u>, 316
F.3d at 1066 (affirming denial of <u>Brady</u> claim when petitioner
"made no showing that [officer]'s file contained complaints
material to his defense"; noting that <u>Pitchess</u> "good cause"
procedure complies with <u>Brady</u> as modified by <u>Ritchie</u>).

Accordingly, the court of appeal was not objectively
unreasonable in denying Petitioner's claim.  Alternatively, his
<u>Brady</u> claim fails on de novo review.

**CONCLUSION**

IT IS ORDERED that the Petition is denied and Judgment be
entered dismissing this action with prejudice.

DATED: <u>August 30, 2016</u>

JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[4] The California Supreme Court recently held that a
defendant is not required to show what information was in the
files to demonstrate good cause for in camera review under
<u>Pitchess</u>.  <u>See</u> <u>People v. Super. Ct. (Johnson)</u>, 61 Cal. 4th 696,
721 (2015) ("The required threshold showing [under <u>Pitchess</u>] does
not place a defendant 'in the Catch-22 position of having to
allege with particularity the very information he is seeking.'"
(citation omitted)).  Petitioner cannot, however, establish a
<u>Brady</u> violation without showing the existence of undisclosed
information that would have given rise to a reasonable
probability of a different result at trial.  <u>See</u> <u>Strickler</u>, 527
U.S. at 281-82; <u>see also</u> <u>Johnson</u>, 61 Cal. 4th at 711-12 (noting
that "<u>Brady</u>'s constitutional materiality standard is narrower
than the <u>Pitchess</u> requirement").